

**SIGNED this 07th day of September, 2006.**

_____
**FRANK R. MONROE**
**UNITED STATES BANKRUPTCY JUDGE**
_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CASE NO. 04-16614-FM |
| | ) | (Chapter 7) |
| MARGARET THOMPSON | ) | |
| | ) | |
| MICHAEL KENTOR | ) | |
| Plaintiff | ) | ADV. NO. 05-1075-FM |
| v. | ) | |
| | ) | |
| MARGARET THOMPSON | ) | |
| Defendant | ) | |

MEMORANDUM OPINION

The Court held a hearing on December 21, 2005 on Defendant's Motion for Summary

Judgment.   After the hearing, the Court took this matter under advisement.   The Court requested

additional briefing from the parties and also performed  its own independent research.  At the time

the Court took the matter under advisement, the Travis County District Court was conducting the

Plaintiff and Defendant's divorce proceeding.  As this proceeding was likely to affect this Court's

ruling, the Court waited until the state court entered the Divorce Decree before issuing this

Memorandum Opinion.

This is a core proceeding under 28 U.S.C. §157 as it is a determination as to whether Plaintiff has standing to pursue certain objections to discharge under §727 of the Bankruptcy Code as well as the allowance/disallowance of Plaintiff's claim against the estate. As such, it is a matter which arises both under title 11 and in a case under title 11. Accordingly, this Court has jurisdiction to enter a final order under 28 U.S.C. §1334(a), (b) and (d), 28 U.S.C. §157(a) and (b)(1), 28 U.S.C. §151 and the Standing Order of Reference from the United States District Court for the Western District of Texas.

Statement of Facts

Background Facts

This case involves an acrimonious separation and ultimate divorce. The Plaintiff, Michael Kentor ("Kentor"), and Defendant, Margaret Thompson ("Dr. Thompson"), were married. Prior to their marriage, the parties entered into a Pre-Marital Agreement and after marriage a Post-Marital Agreement that confirmed the Pre-Marital Agreement in which the parties agreed that any payments for their mutual support would not create a debt owing to the paying party's separate estate or a corresponding right of reimbursement for the parties' community estate or jointly held property unless the parties expressly agreed in writing to the contrary. In 2001 Thomas J. Meredith loaned $1,000,000.00 to Kentor and Dr. Thompson. Kentor and Dr. Thompson co-signed the note evidencing this loan. In 2002 Mr. Meredith loaned another $500,000.00 to Kentor and Dr. Thompson (collectively with the $1,000,000.00 loan, the "Meredith Loan")[1]. Kentor and Dr.

---

[1]The Loan to Kentor and Dr. Thompson was made solely in the name of Thomas J. Meredith. However, Thomas and Lynn Meredith filed the proof of claim evidencing the $1,500,000.00 debt.

2

Thompson are jointly and severally liable on the Meredith Loan.[2]  The Meredith Loan matured on December 31, 2003.  The Merediths have taken no action against Kentor or Dr. Thompson for payment of this debt.

Dr. Thompson is a licensed physician specializing in obstetrics and gynecology.  She now owns and operates a professional association created in February 2004.  Prior to that time, she was the founder and shareholder as well as worked for Renaissance Women's Group, P.A. in Austin.

Dr. Thompson  filed a voluntary Chapter 7 case on December 31, 2004.  She filed her schedules, statement of financial affairs and statement of intentions with the Court on January 18, 2005.  The Chapter 7 Trustee conducted the first meeting of creditors on January 27, 2005.  Dr. Thompson amended her schedules on February 10, 2005.  The Chapter 7 Trustee continued and concluded her meeting of creditors on February 11, 2005.  Dr. Thompson then amended her schedules one more time, on or about March 9, 2005.  All Dr. Thompson's  schedules listed  Kentor as an unsecured disputed claim in the amount of $1.00.  Kentor filed a proof of claim on August 16, 2005 in the amount of $819,204.88 as a contingent unsecured nonpriority claim.  He attached an Exhibit  to his claim that lists ten specified debts which Kentor characterizes as debts incurred by Dr. Thompson for her own behalf for which he expected claims to be made against him and the Meredith Loan for $750,000.00.   None of the creditors listed on Kentor's claim's Exhibit filed proofs of claim in Dr. Thompson's bankruptcy except for the  Merediths.

Kentor filed this adversary proceeding objecting to Dr. Thompson's discharge on March 24, 2005.  He  then purchased the claim of Pool and Spa for $598.95 on November 21, 2005.  Pool and Spa did not file a proof of claim in Dr. Thompson's bankruptcy nor did Kentor file one on behalf of

---

[2]Dr. Thompson and Kentor executed the Meredith note which expressly provides that the "obligations of Borrower under this Note are joint and several."

3

Pool and Spa.  Kentor filed a Notice of Transfer of Claim on November 22, 2005 with respect to Pool and Spa.

Kentor filed a Motion to Lift the Automatic Stay to proceed with a divorce in state court. This Court entered an Agreed Order Lifting the Stay to proceed on June 7, 2005.  The Travis County District Court entered a Divorce Decree on or about March 29, 2006.    The Travis County District Court ruled in the Divorce Decree that, pursuant to the parties' premarital and postmarital property agreements, there was no community property, that the property in Kentor's possession is his separate property and that, with one minor exception, all of the property in Dr.Thompson's possession is her separate property[3].  Divorce Decree-pg 13-16 attached to the *Second Post Hearing Brief in Support of Margaret Thompson's Motion for Summary Judgment* filed June 5, 2006.   The Divorce Decree does not order Dr. Thompson to pay any debts listed in Kentor's proof of claim. The Divorce Decree, however, orders Kentor to pay (and indemnify and hold harmless Dr. Thompson) all of his divorce attorneys' and expert witnesses' fees and the Captive Audio claim and the Big Red Sun claims that he listed in his Exhibit to his proof of claim.   Divorce Decree pg. 16-17.  With respect to the Meredith Loan, the Divorce Decree states:

> The Court recognizes that the "Meredith Note" exists and after the argument of counsel and witness testimony, the Court finds that said "Meredith Note" is not part of the community estate and that said note cannot be divided by the Court and it is THEREFORE ORDERED AND DECREED that this Decree of Divorce will not alter or affect either parties' liability under the Note."

Divorce Decree, p. 16.  The parties therefore continue to be jointly and severally liable under the Meredith Loan.

---

[3]Dr. Thompson was ordered to deliver to Mr. Kentor the Pineapple Dancing Ladies painting purchased by him.

Motion for Summary Judgment and Claims Objection

This is an adversary proceeding in which Kentor is objecting to the discharge of Dr. Thompson pursuant to §727(a)(2), (a)(4) and (a)(5).  Dr. Thompson filed her Motion for Summary Judgment claiming that Kentor has no standing to file a discharge complaint as he is not and cannot be a creditor of the bankruptcy estate and therefore that she is entitled to judgment as a matter of law. Additionally, Dr. Thompson filed an Objection to the Claim of Kentor requesting disallowance of such claim for the same reasons stated in her Motion for Summary Judgment.  Dr. Thompson requested that her Motion be incorporated for all purposes with respect to this claims' objection.

Kentor argues that he has standing merely by filing a proof of claim and that, once he has standing, he cannot lose it even if it is later determined that he is not a creditor.  Further, he argues he has standing because he is scheduled by Dr. Thompson on Schedule F as holding a claim, albeit a disputed claim, for $1.00.  And, finally he urges that he is a creditor because he is an assignee of the Pool and Spa debt.  Clearly, the acrimony between the parties continues post-divorce.

Issues Presented

1.  Whether Kentor is a "creditor" for purposes of bringing a discharge action pursuant to §727 of the Bankruptcy Code?

2.  Whether  Kentor has an allowable claim in Dr. Thompson's bankruptcy estate?

Legal Argument

Under the Federal Rules of Civil Procedure, made applicable to this proceeding by Bankruptcy Rule 7056, a party will prevail on a motion for summary judgment when, "[t]he pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catratt,* 477 U.S. 317, 322, 106 S.Ct.

5

2548, 2552, 91 L.Ed. 2d 265 (1986); Fed. R. Civ. P. 56(c).  In order to prevail, the movant must

demonstrate all elements of the cause of action, but once that burden is established the opposing

party must set forth specific facts showing there is a genuine issue for trial. *R.E.Cruise, Inc., v.

Bruggeman,* 508 F.2d 415, 416 (6th Cir. 1975); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249-

51, 106 S.Ct. 2505, 2511, 91 L.Ed. 2d 202 (1986).  Inferences drawn from the underlying facts must

be viewed in the light most favorable to the party opposing the motion.  *Matushita v. Zenith Radio

Corp.,* 475 U.S. 574, 586-88, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).  *See also In re Bell,* 181

B.R. 311 (Bankr. N.D. Ohio 1995).  Conclusory allegations, however, will not establish an issue of

fact sufficient to defeat summary judgment.  *Wilson Indus., Inc. v. Aviva America, Inc.,* 185 F.3d

492, 494 (5th Cir. 1999).

Standing as "Creditor" for Purposes of Challenging Discharge

Dr. Thompson claims that Kentor is not a creditor as he has no "right to payment" on any of

the alleged debts listed in his proof of claim  based on several legal arguments.  Since he has no right

to payment, he does not have a claim and cannot be a creditor.   And, since he is not a creditor, then

he does not have standing to pursue the §727 actions.

Kentor asserts that 1) because he has a right to contribution with respect to the marital debts,

2) because he is the assignee of the Pool & Spa claim and 3) because he is scheduled by Dr.

Thompson as a creditor on Schedule F as holding an unsecured disputed claim, he has standing to

pursue his objection to discharge and  that summary judgment relief must be denied.

The Bankruptcy Code contains an expansive definition for the terms "claim" and "creditor"

and such definitions are crucial to an understanding of the breadth of the definition of the term

"creditor".  *In re Shumate*, 55 B.R. 489, 492 (W.D. Va. 1985).  The Bankruptcy Code defines the

term "claim" as the "right to payment whether or not such right is reduced to judgment, liquidated,

6

unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured." 11 U.S.C. §101(5)(West 2006).  Section 101(10) defines a creditor as "an entity that has a claim [or community claim] against the debtor that arose at the time of or before the order for relief concerning the debtor." 11 U.S.C. §101(10)(West 2006).  Lastly, the term "community claim' is defined as a "claim that arose before the commencement of the case concerning the debtor for which property of the kind specified in §541(a)(2) of this title is liable whether or not there is any such property at the time of the commencement of the case." 11 U.S.C. §101(7)(West 2006).  The official comments to Section 101 of the Bankruptcy Code indicate that Congress intended the concept of a claim to be given "the broadest possible definition. . . that all legal obligations of the debt, no matter how remote or contingent, will be able to be dealt with in the bankruptcy case."

There are at least two circumstances under which unsecured creditors are found to lack standing under section 727(c).  Some courts have denied a creditor standing when the automatic stay had been modified to permit the creditor to pursue his claim in another court, and the creditor did so and lost.  *See e.g. Stanley v. Valshing (In re Valshing),* 829 F.2d 565 (5th Cir. 1987); *Geisler v. Pansegrau (In re Pansegrau),* 180 B.R. 468, 476 (Bankr. N.D. Tex. 1995).  At least one court has deemed a creditor to lack standing when the creditor purchased claims against the debtor and then objected to discharge purely as harassment.  *See, e.g. Young v. Beugen (In re Beugen),* 99 B.R. 961, 965 (9th Cir. BAP 1989), *aff'd without op.,* 930 F.2d. 26 (9th Cir 1991).  These circumstances appear to be present here and will be discussed below.

Kentor also asserts that the fact that Dr. Thompson scheduled a claim attributable to him constitutes an admission that he has a contingent (albeit disputed) claim in some unliquidated amount.   Dr. Thompson did list Kentor as a creditor on her petition for a disputed amount of $1.00.  Listing a creditor in the schedules can constitute prima facie evidence of a party's interest in the case,

*Haley v. Pope*, 206 F. 266 (9th Cir. 1913); see also *In re Barrager*, 191 F. 247 (D.C. Iowa 1911) and F.R.B.P 3003(b)(1).  However, when one reads F.R.B.P. 3003(b)(1) in its entirety, it provides that there is no prima facie validity of a claim if the creditors are scheduled as holders of disputed, contingent or unliquidated claims as is the case here.  F.R.B.P. 3003(b)(West 2006).  Further, a party whose claim has been conclusively disproved cannot object to a debtor's discharge. *Valshing* at 567 ( Although [creditor] was correctly listed as a contingent creditor in Valshing's bankruptcy petition, once the New Jersey Surrogate Court dismissed her claim, Stanley lost creditor status.  Not being a creditor, Stanley did not have the right under §727(c)(1) to oppose Vahlsing's discharge).  Only those creditors who have claims that will be affected by the discharge can file objections.  *In re Chandler,* 138 F. 637 (7th Cir. 1905).  A discharge would affect the interests of creditors with disputed claims since they have a chance of prevailing on their claims.  However, when a creditor's claim has been finally adjudicated and dismissed, a discharge cannot affect its interest. *Valshing* at 567.

Here, the state court  has determined that there was no community property and no community debt created during Dr. Thompson and Kentor's marriage.  The state court also ordered Kentor to pay certain debts he listed in his proof of claim along with his attorney fees and other divorce fees.  The Divorce Decree did not order Dr. Thompson to pay any  debts listed in Kentor's proof of claim (but see discussion of Meredith Loan below).  These claims were adjudicated in state court and resolved by the Divorce Decree.  The Decree determined that none of the debts in Kentor's proof of claim  were contingent marital debts of the other (except the Meredith Loan discussed below) and as such, he has no standing to pursue a §727 action under those claims.

Kentor also contends he is a legitimate creditor because he purchased and was assigned the Pool & Spa claim against  Dr. Thompson.  He contends that he has a right to object to Dr.

8

Thompson's discharge.   However, it is clear that such purchase was for an improper purpose. Harassment borne out of marital acrimony and divorce is not a proper purpose.  "The right to object to a debtor's discharge is not a marketable commodity which may be purchased by one party from another in order to inflict further punishment and discomfort upon the debtor." *Young v. Beugen* (*In re Beugen*), 99 B.R.961 at 965 (BAP 9th Cir. 1989).    Kentor filed this adversary proceeding in March of  2005.  He did not purchase the Pool & Spa claim of $598.00  until November 21, 2005 eight (8) months after the adversary filing and nineteen (19) days after Dr. Thompson filed her Motion for Summary Judgment objecting to his standing.  Pool & Spa Services did not file a proof of claim in this bankruptcy proceeding and, therefore, Kentor cannot share in any distributions that may be available.  It is obvious that Kentor purchased the claim for the sole purpose of attempting to validate  his standing in order to pursue this action and presumably extract his "pound of flesh" for whatever injuries, real or imagined, he feels were inflicted upon him during his marriage to Dr. Thompson.  The Court will not allow Kentor to manipulate the court system this way.

Kentor's stronger standing argument is the fact that he has co-signer status on the Meredith Loan.  The Divorce Decree did not alter or affect either parties' liability under the note.  The uncontested summary judgment evidence establishes that Kentor and Dr. Thompson are jointly and severally liable on the Meredith Loan.  Mr. Meredith is the holder of an allowed unsecured claim, and  Dr. Thompson has acknowledged that debt in her schedules.  Because Kentor had a contingent right of contribution  against Dr. Thompson at the time of filing, those rights are sufficient to establish his "claim"under the Bankruptcy Code and sufficient to provide "standing" for his challenge to Dr. Thompson's discharge under §727.

Section 727(c)(1) provides that "the trustee, a creditor, or the United States Trustee may object to the granting of a discharge" under Section 727(a). 11 U.S.C. §727(c)(1)(West 2006).  Any

and every creditor has standing to challenge a debtor's right to discharge under §727(c) and to seek a determination that a particular debt is not dischargeable under §523. *Ferraro v. Philips (In re Philips),* 185 B.R. 121, 128 (Bankr. E.D.N.Y 1995). Moreover, bankruptcy courts have consistently interpreted the term "creditor" broadly in keeping with the legislative history, including individuals or entities claiming the right to payment on a prepetition debt even if such debt is disputed, contingent or unliquidated. *Id.* at 128; *Justus v. Justus,* 581 N.E.2d at 1270 ("Congress intended for the term 'claim' to be given the 'broadest possible definition'"). A contingent contribution claim arises at the time a creditor co-signs a note with a debtor, rather than when that creditor makes payments on that note. *Psychotherapy & Counseling Center, Inc. v. Shalala (In re Psychotherapy & Counseling Center, Inc.)*, 195 B.R. 536, 542 (Bankr. D.C. 1996)(Under District of Columbia Law a claim for contribution among parties to a common debt arises when the two parties become jointly liable to a third party and enforceable only after the one seeking it has been forced to pay).

Dr. Thompson's position is that Kentor cannot be a creditor as he has no claim. Dr. Thompson argues Kentor's right to contribution has not arisen because he has not paid the Meredith Loan in full as required under Texas law, *Caldwell v. Stevenson,* 567 S.W.2d 278, 280 (Tex. Civ. App.–Austin 1978, no writ); *see also Dittberner v. Bell,* 558 S.W.2d 527, 534 (Tex. Civ. App.–Amarillo 1977, writ ref'd n.r.e.)("While each signer of a note is liable to the payee for the entire amount, generally, as between two signers, each is liable for one-half of the amount.")(citations omitted); and because he cannot collect against an insolvent debtor. *Maresh v. Jennings,* 38 S.W. 2d 406 (Tex. Civ. App.–Austin 1931, writ ref'd); *Twichell v. Askew*, 141 S.W. 1072 (Texas Civ. App.–Amarillo 1911, no writ). Additionally, she argues that Kentor's contribution claim is disallowable under §502(e)(1)(B) of the Bankruptcy Code. Accordingly, he should not be granted standing to pursue a discharge action.

10

What Dr. Thompson is asking this Court to do is to adjudicate the merits of the contribution claim prior to determining whether Kentor has standing.  Courts have held both ways although a majority of the cases view "creditor" status for standing differently than "creditor" status for claims allowance. *Conway  v. First Interstate Bank of Inglewood (In re Conway),* 96 B.R. 311, 313 (D. Colo. 1989)(Creditor had standing to maintain his challenge to discharge under Section 727, even though his underlying debt was ultimately denied.  There was no requirement in §727(a) that the entity show that its claim against the debtor has been reduced to a "debt" as in §523(a))[4].  Holders of disputed claims are "creditors" and therefore have standing to seek denial of the debtor's discharge notwithstanding the dispute.  *Korte v. United States, (In re Korte),* 262 B.R. 464, 470-71; *First Commericial Group, Inc. v. Hermanson (In re Hermanson),*  273 B.R. 538, 545 (Bankr. N.D. Ill. 2002); *Solomon v. Barman (In re Barman),* 244 B.R. 896, 899 (Bankr. E.D. Mich. 2000).  These courts faced with objections to standing declined to adjudicate the merits of the creditor's disputed claim.  *See also, Norwich Savs. Society v. Flonnes (In re Flonnes),* 183 B.R. 37 (Bankr. D. Conn. 1995)(Creditor did not lose standing to object to the debtor's discharge even though its claim was unenforceable finding that creditor qualified at the commencement of the case as a creditor under §727(c) and did not lose standing by not subsequently securing a deficiency judgment underlying the note during the progress of the case).

A few courts have held  that when an obligation is entirely unenforceable under applicable law, creditor status in bankruptcy is lost. *Geisler v. Pansegrau,* 180 B.R. 468 (Bankr. N.D. Tex. 1995)(Investor lacked standing to pursue denial of discharge complaint because all of the investor's

---

[4]Here, creditor had 1)filed a proof of claim which was never objected to by debtor; 2) its claim was clearly contingent and fit within the definition of "claim" as set forth in §101(9); 3) it clearly fit within the definition of "creditor" pursuant to §101(4); 4) it was listed as a creditor with a claim by the debtor; 5) debtor never denied prior to trial the fact that First Interstate was a creditor with a claim against him and 6) the Bankruptcy Code does not require that a creditor's claim be provable.

claims that could have supported denial of discharge filing were barred by res judicata); See also *Vahlsing,* 829 F2d 565, 567 (5th Cir. 1987)(Pre-petition creditor who had claim adjudicated and dismissed in state court lost creditor status); *But see, Horizon Financial F.A. v. Gresham (In re Gresham),* 95 B.R. 836 (Bankr. S.D. Fla. 1988)(reaching merits of debtor's objection to creditor's claim and finding creditor lacked standing).

Kentor's claim, however, is not barred by res judicata or the statute of limitations, and the divorce court did not resolve the contribution claim in connection with the Meredith Loan.  The *Horizon* court is in the minority with respect to determining the merits of the claim prior to the issue of standing.  This Bankruptcy Court nor any state court has yet to adjudicate the allowance/disallowance of Kentor's contribution claim.  Further, the majority of the court's addressing this issue have determined that any such adjudication should not affect the issue of standing.  This Court agrees.

Kentor is a "creditor" of Dr. Thompson because he had a contingent claim for contribution on the petition date against Dr. Thompson.  He was liable and could be called upon in the future to pay the same.  The Divorce Decree did nothing to alter the parties' positions.  The question of this claim's enforceability against the bankruptcy estate arose after the filing of the bankruptcy case and not before.  Further, we cannot predict the future.  If Kentor is successful in this case and Dr. Thompson does not receive a discharge, he may then be called upon to pay the Meredith Loan in full and have a right to contribution which would be enforceable presuming the good doctor is then solvent.  *Chalk v. Collier,* 208 S.W. 972 (Tex. Civ. App.–Amarillo 1919 writ ref'd)(The insolvent remains liable to those paying and may be compelled to pay them if he or she becomes able).  Who knows.  Crazier things have happened.  But, the point is that Kentor held that contingent claim on the petition date.  And that is enough for standing.  Whether it will ever be non-contingent or

collectible is irrelevant to our inquiry. Kentor has standing to pursue this discharge action.

Objection to Claim

Defendant urges that all Kentor's claims listed in his Exhibit to his proof of claim (except the Meredith Loan) are disallowable under §502(e)(1)(A) which provides that: "the court shall disallow any claim for reimbursement or contribution of an entity that is liable with the debtor . . to the extent that–(A) such creditor's claim against the estate is disallowed.." 11 U.S.C. §502(e)(1)(A)(West 2006). The Divorce Decree determined certain of these claims to be separate claims against Kentor and therefore they are not allowable in this case. None were found to be the debts of Dr. Thompson. Further, even if the Divorce Decree had not resolved them, the bar date for filing proofs of claim was August 18, 2005. None of the creditors listed on Kentor's Exhibit to his proof of claim filed a proof of claim, except the Merediths. This Court agrees with Dr. Thompson, that to the extent Kentor could rely on any alleged right of indemnity or contribution (and he no longer can) related to any of these creditors' claims (other than the Merediths), Kentor does not have an allowable claim under §502(e)(1)(A) because none of them filed claims. Further, he has not paid them.

As to any right to contribution or reimbursement arising out of the Meredith Loan, §502(e)(1)(B) provides that the court shall disallow any claim for reimbursement or contribution of a co-debtor if: "such claim for reimbursement or contribution is contingent as of the time of allowance or disallowance of such claim for reimbursement or contribution." 11 U.S.C. §502(e)(1)(B) (West 2006).

The Merediths timely filed a proof of claim in this case and it is undisputed. The Meredith Loan matured December 31, 2003, and Kentor has admitted that the Merediths have made no effort to collect from him; neither has he paid "one red cent" on the Meredith Loan. Kentor's claim, if any,

13

merely duplicates the Merediths' claim and should be disallowed.  *See In re Morton,* 1993 WL 13152213 (Bankr. E.D. Va. Aug. 9, 1993)(Section 502(e) "requires disallowance of the claim for . . .contribution of a co-debtor. . .unless the claim of the creditor has been paid in full.") Further, allowing Kentor's claim for contribution could result in a windfall to him as he might receive payment but not use those funds to pay the Merediths.

### Conclusion

Kentor's asserted contingent right of contribution under the Meredith Loan gives him standing to pursue his Complaint Objecting to Discharge against Dr. Thompson.  All claims listed in Kentor's proof of claim are disallowed for the reasons stated above.  Orders of even date herewith will be entered.

###